[Cite as *Grey v. Walgreen Co.*, 197 Ohio App.3d 418, 2011-Ohio-6167.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96846**

# GREY,

APPELLANT,

v.

# WALGREEN COMPANY,

APPELLEE.

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-741895

**BEFORE:** Stewart, P.J., Jones, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 1, 2011

**ATTORNEYS:**

Seaman Garson, L.L.C., James A. DeRoche, Stuart I. Garson, David L. Meyerson, and David H. Krause; and Dworken & Bernstein Co., L.P.A., Patrick J. Perotti, and Nicole T. Fiorelli, for appellant.

Ulmer & Berne L.L.P., Marvin L. Karp, Michael N. Ungar, David D. Yeagley, and Ashley A. Weaver, for appellee.

MELODY J. STEWART, Presiding Judge.

{¶ 1} Plaintiff-appellant, Evelyn Grey, appeals from a Civ.R. 12(B)(6) dismissal of her class-action complaint for damages against defendant-appellee, Walgreen Company. Grey alleged that Walgreen's pharmacy engaged in a practice of charging workers' compensation claimants for prescription drugs in amounts that exceeded the express terms and conditions of regulations and guidelines established by the Ohio Bureau of Workers' Compensation. She alleged that Walgreen's practice violated R.C. 4121.44(K), which states: "No health care provider, whether certified or not, shall charge, assess, or otherwise attempt to collect from an employee, employer, a managed care organization, or the bureau any amount for covered services or supplies that is in excess of the allowed amount paid by a managed care organization, the bureau, or a qualified health plan." Walgreen, citing *Patterson v. Rite Aid Corp. Headquarters* (N.D.Ohio E.D.2010), 752 F.Supp.2d 811, sought dismissal of the complaint on grounds that R.C. 4121.44(K) does not provide for a private cause of action. The court agreed, and relying on *Patterson* for the conclusion that Grey could not maintain a private action for any alleged overbilling by Walgreen, dismissed the entire complaint.

I

{¶ 2} Grey first argues that the court erred as a matter of law by finding that she had no private right of action under R.C. 4121.44(K).

A

{¶ 3} We employ a de novo standard of review for motions to dismiss filed pursuant to Civ.R. 12(B)(6), *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, and accept all factual allegations of the complaint as true and draw all reasonable

inferences in favor of the nonmoving party. *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 565 N.E.2d 584. A motion to dismiss for failure to state a claim upon which relief can be granted can be granted only when it appears beyond doubt from the complaint that the plaintiff can prove no set of facts entitling her to relief. *LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, 872 N.E.2d 254, ¶14.

**{¶ 4}** Grey's complaint alleged that the bureau has an outpatient pharmacy-benefit program that covers drugs used to treat conditions related to an injured worker's occupational injury or disease. Under this program, pharmacies are required to submit drug bills directly to the bureau's pharmacy-benefits manager for all claims, including bills for new claims that have not yet been allowed by the bureau. In situations where a worker presents a prescription before a claim has been allowed (or even filed), a pharmacy may either (1) accept an assignment of the claim, fill the prescription, and seek reimbursement from the bureau at a later date or (2) fill the prescription and charge the injured worker the scheduled amount established by the bureau, at which point the worker will be reimbursed by the bureau if the claim is later allowed.

**{¶ 5}** Grey alleged that she suffered a workplace injury and received medical treatment although she had yet to file a claim for workers' compensation. Her treating physician gave her a prescription for medicine, which she took to a Walgreen pharmacy. Walgreen charged her the full retail price for the prescription. Grey alleged that the bureau later allowed her claim for a workplace injury and that the bureau reimbursed Grey only for the scheduled amount of her prescription — an amount that was less than that charged by Walgreen.

B

**{¶ 6}** When determining whether, in the absence of explicit language, a statute grants a private right of action, Ohio courts have used the test set forth in *Cort v. Ash* (1975), 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26:

**{¶ 7}** "'First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," * * *—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? * * * Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?'" *Strack v. Westfield Cos.* (1986), 33 Ohio App.3d 336, 337, 515 N.E.2d 1005, quoting *Cort* at 78.

**{¶ 8}** There is ample authority for the proposition that the *Cort* test is no longer valid. The United States Supreme Court has gradually focused on the single factor of whether there was a legislative intent to grant a private right of action. See Stabile, The Role of Congressional Intent in Determining the Existence of Implied Private Rights of Action (1996), 71 Notre Dame L.R. 861, 868-869. For example, in *Transamerica Mtge. Advisors, Inc. (TAMA) v. Lewis* (1979), 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146, the Supreme Court stated that its analysis of whether a private right of action existed under the Investment Advisers Act of 1940, Title 15, Section 80b-1 et seq., U.S. Code, was "basically a matter of statutory construction." Id. at 15. It found no evidence in the legislative history of the act to suggest any intent by Congress to create a private cause of action. Id. at 18. And in *Touche Ross & Co. v. Redington* (1979), 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82, the Supreme Court established that congressional intent is the exclusive factor used in the determination, declaring that the task of courts is "limited solely to determining whether Congress intended to create the private right of action." Id. at 568.

**{¶ 9}** Most recently, in *Alexander v. Sandoval* (2001), 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517, the Supreme Court appeared to put to rest any question concerning the continuing validity of the *Cort* factors by reaffirming its focus on legislative intent, stating that "[h]aving sworn off the habit of venturing beyond Congress's intent, we will not accept respondents' invitation to have one last drink." Id. at 287. The Supreme Court elaborated:

**{¶ 10}** "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." (Citations omitted.) Id. at 286-287.

**{¶ 11}** In other words, "the relevant inquiry for determining whether a private right of action exists appears to have two steps: (1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy? Only if the answer to both of these questions is 'yes' may a court hold that an implied private right of action exists under a federal statute." *Wisniewski v. Rodale, Inc.* (C.A.3, 2007), 510 F.3d 294, 301. See also *Fawcett v. G.C. Murphy & Co.* (1976), 46 Ohio St.2d 245, 348 N.E.2d 144 (the courts will not infer the existence of a private cause of action unless the Ohio General Assembly manifests a "clear implication" for private causes of action).

C

**{¶ 12}** "[I]n cases of statutory construction, 'our paramount concern is the legislative intent in enacting the statute.' " *State v. Buehler*, 113 Ohio St.3d 114, 2007-Ohio-1246, 863 N.E.2d 124, at ¶ 29, quoting *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. The courts determine legislative intent by looking to the language of the statute and the

purpose that is to be accomplished by the statute. *Rice v. CertainTeed Corp.* (1999), 84 Ohio St.3d 417, 419, 704 N.E.2d 1217. When the meaning of the statute is "clear and unambiguous," the statute must be applied "as written." *Cheap Escape Co., Inc. v. Haddox*, *L.L.C.,* 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 9.

{¶ 13} As earlier noted, R.C. 4121.44(K) provides that no health-care provider shall charge or attempt to collect from any employee any amount for covered services or supplies in excess of the allowed amount paid by the bureau or its benefits manager. In the event a health care provider does overcharge or attempt to collect an amount in excess of that allowed by the bureau, "[t]he attorney general may bring an action on behalf of the state and a self-insuring employer may bring an action on its own behalf to enforce this section in any court of competent jurisdiction. The attorney general may settle or compromise any action brought under this section with the approval of the administrator." See R.C. 4121.444(D).

{¶ 14} As the foregoing statutes make clear, the General Assembly not only failed to grant a private right of action to individual workers' compensation claimants for claims that they have been overcharged, it specifically gave a right of action to the attorney general and affected self-insured employers. R.C. Chapter 4121 could not be clearer in expressing the intent that enforcement of R.C. 4121.44(K) resides solely with the attorney general. The district court in *Patterson* reached this same conclusion:

{¶ 15} "While the Plaintiffs, as workers [sic] compensation claimants, are members of a class for whose especial benefit the statute was enacted, there is no indication of any legislative intent to create a private remedy under § 4121.44(K), however there is indication of intent to deny such a remedy in that the statute provides for state governmental enforcement. See § 4121.444 generally providing penalties for obtaining or attempting to obtain payment by deception;

termination of agreement or reimbursement; and § 4121.444(D) empowering the attorney general to bring an action on behalf of the state. * * * There is no indication that a private remedy is necessary to enforce the statute. Based upon this analysis, this Court will not be the first to imply a private right of action under § 4121.44(K)." Id., 752 F.Supp.2d at 816-817.

{¶ 16} Grey argues that *Patterson* is distinguishable on its facts because the medications prescribed in that case required preapproval from the benefits manager — preapprovals that had not been obtained by either plaintiff in that case, thus resulting in rejection of the claims for reimbursement of out-of-pocket prescription expenses. So Grey argues that the pharmacy in *Patterson* had the right to collect the full cash price of the prescriptions at the time they were filled and was being wrongfully asked to refund monies that it had the right to charge in the first place.

{¶ 17} Grey's argument that *Patterson* is factually distinguishable is irrelevant because the distinguishing facts say nothing about the legislative intent behind R.C. 4121.44(K). R.C. Chapter 4121 is, at bottom, a statute that creates an administrative body and authorizes the promulgation of rules and procedures to govern that body. The right of the state to enforce the rules and regulations governing workers' compensation is explicitly reposed with the attorney general. It is a rule of statutory construction that "the General Assembly is presumed to have known that its designation of a remedy would be construed to exclude other remedies, consistent with the statutory construction maxim of expressio unius est exclusio alterius." *Hoops v. United Tel. Co. of Ohio* (1990), 50 Ohio St.3d 97, 101, 553 N.E.2d 252. We have no reason to conclude that the General Assembly intended, in the absence of express language, to grant a private right of action to affected claimants when it expressly granted that right to the attorney general.

{¶ 18} The General Assembly did not create a personal right under R.C. 4121.44(K), nor did it create a private remedy, because it plainly gave a right of action only to the attorney general or

self-insuring employers under the workers' compensation statutes. We hold, therefore, that there is no private right of action to seek redress for violations of R.C. 4121.44(K). With no right to bring a private action, Grey cannot as a matter of law prevail on her claim for damages under R.C. 4121.44(K).[1]

## II

{¶ 19} In addition to her claim under R.C. 4121.44(K), Grey set forth a claim for unjust enrichment. In its motion to dismiss, Walgreen argued that these claims were based upon an alleged violation of the bureau's billing manual, but that Grey failed to establish as a predicate for liability that she submitted a claim for "covered services" under R.C. 4121.44(K). It argued that Walgreen is not responsible for refunding the difference between the cash price for a prescription and the price set by the bureau.

{¶ 20} In the absence of a contractual relationship, a party may seek compensation when a person "has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel* (1938), 133 Ohio St. 520, 528, 14 N.E.2d 923. To establish a claim of unjust enrichment, the plaintiff must establish the following elements: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *L & H Leasing Co. v. Dutton* (1992), 82 Ohio App.3d 528, 534, 612 N.E.2d 787, citing *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298.

---

[1] Our conclusion that there is no private right to enforce claimed violations of R.C. 4121.44(K) necessarily moots consideration of Grey's arguments relating to breach of contract, fraudulent misrepresentation, and fraud.

**{¶ 21}** Grey's unjust-enrichment claim rests on the premise that Walgreen was bound by the terms of the bureau's pharmacy benefits program to either provide the prescription without payment from the customer and await future reimbursement from the bureau or seek payment directly from the customer but accept in payment no more than the amount allowed by the bureau. She argues that Walgreen retained an unjust benefit by charging her more than the amount allowed by the bureau.

**{¶ 22}** The same type of unjust enrichment claim was raised in *Patterson*:

**{¶ 23}** "While the Member Pharmacy Agreement covers reimbursement, the Plaintiffs are not a party, or at least in Defendant's view, third party beneficiaries to that contract, thus that express contract would not act to bar Plaintiffs' equitable claims. However, Plaintiffs in this case purchased prescription drugs from Rite Aid while they were not eligible injured workers under the Agreement. At that point, Rite Aid was not required by the Agreement or § 4121.44(K) to sell the prescription drugs to Plaintiffs at the amounts listed in the BWC fee schedule. Rather, Rite Aid and Plaintiffs were free to enter into separate, express contracts between Rite Aid and Plaintiffs as cash customers for the sale of the medications at the retail price and that is what they did. Thus, Plaintiffs' unjust enrichment and money had and received claims are dismissed because express contracts govern the subject matter." *Patterson*, 752 F.Supp.2d at 818.

**{¶ 24}** The court, relying on *Patterson*, held that Grey purchased her prescription drugs before her claim had been allowed by the bureau, at which point Walgreen was free to charge Grey the full cash price and that Grey entered into a binding contract with Walgreen by paying that price. We find no fault with the court's analysis. Grey's arguments that there are insufficient facts to discern whether a contract arose for purposes of a Civ.R. 12(B)(6) are specious. Her complaint relies entirely on the premise that she was overcharged by Walgreen at the *point of sale*, so she cannot now argue that there were insufficient facts pleaded in the complaint to show that a transaction between

her and Walgreen occurred.  While a plaintiff is entitled to plead alternative legal theories when the facts are in doubt, Grey did not do so here.  The complaint consistently alleges that she paid for and received prescription medicine from Walgreen, a transaction that bears all the hallmarks of a completed contract.  Id.  The court did not err by concluding that the facts, as stated, would not allow Grey to assert a claim for unjust enrichment.

Judgment affirmed.

Jones and E. Gallagher, JJ., concur.