**Alan BROSZ, derivatively on behalf of Big Lots, Inc., Plaintiff,**

v.

**Steven FISHMAN, et al., Defendants.**

**Case No. 1:13–cv–753.**

United States District Court, S.D. Ohio, Eastern Division.

Signed April 14, 2015.

Brett M. Renzenbrink, Thomas P. Glass, Strauss Troy Co., LPA, Richard Stuart Wayne, Cincinnati, OH, Brett D. Stecke, Jeffrey J. Ciarlanto, The Weiser Law Firm, P.C., Wayne, PA, for Plaintiff.

William Darrell Kloss, Jr., John Joseph Kulewicz, Vorys Sater Seymour & Pease, Columbus, OH, Michael A. Paskin, Timothy G. Cameron, Cravath, Swaine & Moore LLP, New York, NY, for Defendants.

### OPINION AND ORDER

MICHAEL H. WATSON, District Judge.

Defendants move to dismiss the verified shareholder derivative complaint. ECF No. 23. For the reasons that follow, the Court **GRANTS** the motion.

## I. BACKGROUND AND FACTS

This shareholder derivative suit involves allegations that, during a period of time in 2012, certain directors and officers of nominal Defendant Big Lots, Inc. ("Big Lots" or "Company") engaged in a scheme to inflate the value of Big Lots stock by concealing from the public the true financial condition of the Company while at the same time selling large portions of their personal holdings of the stock at inflated values.

### A. Procedural History

Plaintiff. Alan Brosz, a shareholder of Big Lots, filed this action on October 18, 2013. Compl., ECF No. 1. The Complaint names as Defendants Big Lots; current and former Big Lots directors Jeffrey Berger, David Kollat, Brenda Lauderback, Phillip Mallot, Russell Solt, and Dennis Tishkoff; current and former Big Lots

officers Joe Cooper, Charles Haubiel, Timothy Johnson, Robert Claxton, John Martin, Norman Rankin, Paul Schroeder, Robert Segal, and Steven Smart; and Steven Fishman, Big Lots' former CEO and Chairman. *Id.* ¶¶ 16–32. It alleges causes of actions for: breach of fiduciary duties for disseminating false and misleading information (Count I); breach of fiduciary duties for failing to maintain internal controls (Count II); breach of fiduciary duties for engaging in an insider selling scheme (Count III); unjust enrichment (Count IV); abuse of control (Count V); gross mismanagement (Count VI); corporate waste (Count VII); breach of fiduciary duties for violating internal Company policies (Count VIII); and misappropriation of trade secrets in violation of the Ohio Uniform Trade Secrets Act (Count IX).

On October 23, 2013, this case was transferred to this Court as it is related to the consolidated action in Case No. 2:12–cv–445. ECF No. 3. On November 7, 2013, the parties to this action and 2:12–cv–445 stipulated that those actions would be coordinated, although not consolidated, during the pendency of the motion to dismiss filed by the Defendants in this case. Stipulation ¶ 1, ECF No. 5.

The Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Mot. Dismiss, ECF No. 23. The briefing on the motion is complete, and the issues presented therein are ripe for decision. The Defendants have requested oral argument, but, as the Court concludes that such argument is unnecessary for resolution of the motion, that request is denied.

## B. The Complaint

The Complaint alleges the following basic facts: Big Lots is "North America's largest broadline closeout retailer" and operates over 1,400 stores in the contiguous United States. Compl. ¶ 40, ECF No. 1. On February 2, 2012, the individual Defendants caused Big Lots to issue a press release projecting the Company's financial performance for Fiscal Year 2011, which had just ended, and the final quarter of Fiscal Year 2011. *Id.* ¶ 41. The February 2nd press release revised fourth-quarter diluted earnings per share guidance upward and forecast that Fiscal Year 2011 had achieved a 4% to 5% increase in diluted earnings per share over Fiscal Year 2010. *Id.* Based on the press release, Big Lots' stock increased $3.27 per share to close at $42.82 on February 2nd. *Id.* ¶ 42.

On March 2, 2012, Big Lots issued a press release announcing financial results for Fiscal Year 2011 and making positive projections for the Company's financial performance for fiscal year 2012. *Id.* ¶ 43. This press release included a projection that comparable store sales for stores in the United States would increase by 2% to 3% during the fiscal year. *Id.*

Between March 6, 2012 and March 28, 2012, the individual Defendants sold 817,874 shares of their Big Lots stock. *Id.* ¶ 49. During the first quarter of 2012, Big Lots was also purchasing $99,000,000 of its own stock at the direction of its Board of Directors, resulting in the stock price being artificially propped up. *Id.* The stock sales of the individual Defendants are summarized below:

780

| Defendant | Date of Sale | Shares Sold | Price per Share | Total Price | Approx. % of Shares Owned |
|---|---|---|---|---|---|
| Lauderback | 3-6-2012 | 30,000 | $44.04 | $1,321,200.00 | 74% |
| Haubiel | 3-15-2012 | 56,250 | $45.61 | $2,565,562.50 | 41% |
| Kollat | 3-6-2012 | 60,000 | $43.96 | $2,637,600.00 | 70% |
| Tishkoff | 3-7-2012 | 4,000 | $44.62 | $178,480.00 | 22% |
| Berger | 3-12-2012 | 20,000 | $45.21 | $904,200.00 | 60% |
| Cooper | 3-7-2012 | 44,875 | $44.76 | $2,008,605.00 | 54% |
| | 3-27-2012 | 25,000 | $46.60 | $1,165,000.00 | |
| Martin | 3-8-2012 | 73,750 | $45.00 | $3,318,750.00 | 62% |
| | 3-27-2012 | 15,000 | $46.60 | $699,000.00 | |

| | | | | | |
|---|---|---|---|---|---|
| Rankin | 3-6-2012 | 21,300 | $44.37 | $945,081.00 | 49% |
| Schroeder | 3-7-2012 | 4,000 | $44.55 | $178,200.00 | 73% |
| | 3-22-2012 | 5,000 | $45.11 | $225,550.00 | |
| | 3-27-2012 | 2,000 | $46.60 | $93,200.00 | |
| Mallot | 3-9-2012 | 1,500 | $45.39 | $68,085.00 | 11% |
| Claxton | 3-13-2012 | 37,500 | $45.71 | $1,714,125.00 | 58% |
| | 3-27-2012 | 15,000 | $46.60 | $699,000.00 | |
| Segal | 3-7-2012 | 11,250 | $44.85 | $504,562.50 | 65% |
| | 3-9-2012 | 5,792 | $45.41 | $263,014.72 | |
| | 3-13-2012 | 5,458 | $45.65 | $249,157.70 | |
| | 3-21-2012 | 1,875 | $45.70 | $85,687.50 | |

| | | | | | |
|---|---|---|---|---|---|
| | 3-27-2012 | 4,264 | $46.40 | $197,849.60 | |
| | 3-28-2012 | 7,736 | $45.86 | $354,772.96 | |
| Solt | 3-6-2012 | 6,425 | $43.57 | $279,937.25 | 42% |
| Smart | 3-19-2012 | 10,000 | $45.75 | $457,500.00 | 50% |
| | 3-27-2012 | 10,000 | $46.60 | $466,000.00 | |
| Fishman | 3-20-2012 | 227,500 | $45.23 | $10,289,825.00 | 46% |
| | 3-27-2012 | 106,125 | $46.40 | $4,924,200.00 | |
| Johnson | 3-14-2012 | 5,625 | $45.47 | $255,768.75 | 17% |
| | 3-27-2012 | 649 | $46.40 | $30,113.60 | |

*Id.* ¶¶ 50–51. The individual Defendants received a total of $37,080,028.08 in gross proceeds from their stock sales. *Id.* 50. Plaintiff alleges that these sales were made while the individual Defendants possessed "material, adverse, nonpublic information" concerning Big Lots' true financial picture. *Id.* ¶ 49. He further alleges that Defendants Cooper, Fishman, Haubiel, and Johnson "were continuously apprised of ongoing sales trends and the performance of the Company's critical merchandising operations through Big Lots' extensive reporting and information delivery systems." *Id.* 45.

On April 23, 2012, after stock markets had closed, Big Lots issued a press release updating financial forecasts for the first quarter of 2012. *Id.* ¶ 55. The press release stated:

we now expect U.S. comparable store sales to be slightly negative compared to our prior guidance issued on March 2, 2012.... U.S. comparable store sales were on plan through the first six weeks of the quarter; however, sales compared to plan began to slow in late March and trends have further softened as we moved through the month of April.

*Id.* On April 24, 2012, Big Lots' stock dropped 24% from its closing price of the previous day. *Id.* ¶ 58.

On January 28, 2013, Plaintiff sent a letter to Fishman demanding that Big Lots' Board investigate the suspicious stock sales of the individual Defendants. *Id.* ¶ 65, Ex. A. By letter dated September 9, 2013, the Board indicated its refusal to take such action. *Id.* ¶ 66, Ex. B.

## II. STANDARD OF REVIEW

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion requires dismissal if the complaint fails to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The complaint must also "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Handy–Clay v. City of Memphis, Tenn.,* 695 F.3d 531, 538 (6th Cir.2012) (quotations and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Finally, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955) (internal quotations omitted).

## III. ANALYSIS

### A. Big Lots' Refusal to Initiate Litigation

The Defendants first contend that the Complaint should be dismissed because Plaintiff has not sufficiently alleged facts overcoming the presumption that the Board acted in the best interest of Big Lots in refusing to bring suit pursuant to Plaintiff's demand letter. The Supreme Court has described the purposes of derivative suits and the genesis of the demand requirement as follows:

> The derivative form of action permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties. Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers. To prevent abuse of this remedy, however, equity courts established as a precondition for the suit that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions. This requirement is accommodated by Federal Rule of Civil Procedure 23.1....

*Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 95–96, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (internal quotations and citations omitted).

Plaintiff's January 28, 2013 demand letter details the allegations subsequently made in the Complaint and concludes by demanding that Big Lots' Board:

(i) undertake (or cause to be undertaken) an independent internal investigation into Management's violations of Ohio and/or federal law; and (ii) commence a civil action against each member of Management to recover for the benefit of the Company the amount of damages sustained by the Company as a result of their breaches of fiduciary duties alleged [in the demand letter].

Compl. Ex A. at 9, ECF No. 1–1. On September 9, 2013, Big Lots' attorneys responded to the demand letter as follows:

We represent the special committee of the Board of Directors of Big Lots, Inc. (the "Company") appointed to conduct an independent investigation of alleged violations of law set forth in your letter of January 28, 2013 (the "Demand Letter"), as counsel to putative Big Lots shareholder Alan Brosz. The special committee has concluded its investigation and made its recommendation to the Board, and the Board then made its determination.

The Company has informed us as counsel to the special committee as follows: (a) the Board has determined, based on the work and recommendation of the special committee, that the charges in the Demand Letter are unsupported and that none of the current or former officers or directors named in the Demand Letter breached any fiduciary duties owed to the Company or otherwise violated applicable law; and (b) the Board therefore has determined to reject the demand to commence civil action against the individuals named in the Demand Letter.

*Id.* Ex. B at 1, ECF No. 1–2.

According to Plaintiff, Big Lots' response to his demand is inadequate, justifying his pursuit of derivative litigation on the Company's behalf. He specifically alleges that:

[t]he Refusal was most notable for what it lacked, rather than its scant contents. Specifically, the Refusal contained absolutely no information whatsoever concerning the kind of "investigation" the [Special Committee] and/or the Board engaged in, or what the substantive findings were regarding the merits of any of Plaintiffs claims as set forth in the Demand. The Refusal merely contained a blanket refusal of the specific claims set forth in the Demand, with nothing more. Clearly, the Board's complete disregard of the actual merits of the claims set forth in the Demand is improper and demonstrates the Board's lack of diligence and good faith.

*Id.* ¶¶ 67–68, ECF No. 1.

Pursuant to Rule 23.1, a complaint in a shareholder derivative suit must "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority and . . . the reasons for not obtaining the action or not making the effort." Fed. R.Civ.P. 23.1(b)(3). "[A]lthough Rule 23.1 clearly *contemplates* both the demand requirement and the possibility that demand may be excused, it does not create a demand requirement of any particular dimension. On its face, Rule 23.1 speaks only to the adequacy of the shareholder representative's pleadings." *Kamen,* 500 U.S. at 96, 111 S.Ct. 1711 (emphasis in original). In evaluating whether the demand requirement has been satisfied at the pleading stage, a court must "identify the source and content of the substantive law that defines the demand requirement." *Id.* at 97, 111 S.Ct. 1711. As Big Lots is incorporated in Ohio, the Court will look to Ohio law in evaluating the Company's response to Plaintiff's demand. *See In re Ferro Corp. Derivative Litig.,* 511 F.3d 611, 617 (6th Cir.2008).

■ "Under Ohio law, it is presumed that any action taken by a director on behalf of the corporation is taken in good faith and for the benefit of the corporation." *Drage v. Procter & Gamble,* 119 Ohio App.3d 19, 694 N.E.2d 479, 482 (1st Dist.1997). Regarding the initiation of litigation:

> The board of directors has the primary authority to file a lawsuit on behalf of the corporation. The shareholders may make a demand on the directors to bring a suit on behalf of the corporation, but no shareholder has an independent right to bring suit unless the board refuses to do so and that refusal is **wrongful, fraudulent, or arbitrary, or is the result of bad faith or bias** on the part of the directors.

*Id.* (emphasis supplied) (internal citations omitted). *See also In re Gen. Tire and Rubber Co. Sec. Litig.,* 726 F.2d 1075, 1080–81 (6th Cir.1984). Given the presumption in favor of the Board's refusal to act, it is Plaintiff's burden to establish that the refusal was wrongful.

■ The parties note that Ohio has little precedent on the exact dimensions of a derivative plaintiff's burden in establishing a wrongful refusal to act by a corporation after plaintiff's demand is received. Today, however, the Court need not attempt to more precisely define those standards as it finds Plaintiff's allegations regarding wrongfulness to be inadequate under any conceivable standard. Those allegations take up a bare two paragraphs in the Complaint and are lacking sufficient information to overcome the presumption that the Board acted in the best interests of Big Lots in refusing to initiate litigation. In this regard, the allegation that the response letter "merely contained a blanket refusal of the specific claims set forth in the Demand, with nothing more," is, to large extent, facially inconsistent with Big Lots' letter. Far from simply indicating that the demand was received and perfunctorily declined, the letter explains that: 1) a special committee was formed; 2) that committee conducted an investigation into the specific allegations contained in the demand letter; 3) based on the recommendation of the special committee, the Board concluded that the allegations contained in the demand letter were unfounded; and 4) the Board accordingly decided to reject the demand.

While Big Lots' response letter is not extremely detailed, it is Plaintiff's burden to allege facts establishing that the response was "wrongful, fraudulent, or arbitrary, or is the result of bad faith or bias." In attempting to do so, Plaintiff merely states that "[c]learly, the Board's complete disregard of the actual merits of the claims set forth in the Demand is improper and demonstrates the Board's lack of diligence and good faith." At best, that is a conclusory allegation. For instance, there are no additional facts supporting the conclusion that the Board actually did disregard the merits of Plaintiff's accusations or that the Board acted in bad faith given the response letter's indication that an investigation was conducted and that the demand was declined based on the results of that investigation. Finally, as noted by Defendants, there are means available under Ohio law for a shareholder to request information from a corporation. *See* Ohio Rev.Code § 1701.37(C). As such, it would have been possible for Plaintiff to attempt to request more information from Big Lots concerning the details of the investigation of the special committee.

For these reasons, Plaintiff has failed to meet his burden of establishing that the refusal of his demand letter was wrongful, and dismissal of the Complaint is appropriate on that ground. While Plaintiff asserts that Defendants have improperly attempted to convert their 12(b)(6) motion to one

for summary judgment by introducing evidentiary material extraneous to the Complaint, the Court has not considered such material in reaching the above conclusion. *See* Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and **not excluded by the court**, the motion must be treated as one for summary judgment under Rule 56." (emphasis supplied)). The Plaintiff also makes much of the fact that the Board apparently did not form a special litigation committee to investigate the allegations contained in the demand letter, but he has cited no legal authority supporting the proposition that Ohio law requires a board of directors to form such a committee in response to a shareholder demand letter. Plaintiff's arguments concerning the propriety of the investigation done by the special committee essentially boil down to an assertion that Defendants must prove that their investigation into the allegations was adequate. Such a position, however, would turn the presumption of the business judgment rule on its head.

Having determined that dismissal of the Complaint is appropriate in light of Plaintiffs failure to adequately allege that Big Lots' refusal of his demand letter was wrongful, the Court will nevertheless next consider whether the individual claims pleaded survive scrutiny under Rule 12(b)(6).

## B. Counts I, II, III, & VIII

Counts I, II, III, and VIII of the Complaint allege that the individual Defendants breached their fiduciary duties to Big Lots by disseminating false and misleading information (Count I), failing to maintain internal controls (Count II), engaging in an insider selling scheme (Count III), and violating internal Company policies (Count VIII).

As to Count III, the parties dispute whether Ohio actually recognizes a derivative cause of action for breach of fiduciary duties based on insider trading. *Compare Gen. Acquisition, Inc. v. Gencorp Inc.,* 766 F.Supp. 1460, 1477 (S.D.Ohio 1990) (Ohio law "is sufficiently broad to support a cause of action for breach of fiduciary duty where the fiduciary exploits confidential information made privy to it by virtue of the fiduciary relationship for purposes of engaging in insider trading"), *with In re Goodyear Tire & Rubber Co. Derivative Lit.,* 2007 WL 43557, at *8, 2007 U.S. Dist. LEXIS 1233, at *25 (N.D.Ohio Jan. 5, 2007) ("Ohio law does not recognize a derivative claim for insider trading."). The Court need not resolve this dispute, as, even assuming that Ohio would permit such a claim, it determines that Count III should be dismissed on alternative grounds.

In Ohio, "[c]laims for breach of fiduciary duty require proof of the following elements: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." *Hubbard Family Trust v. TNT Land Holdings, LLC,* 9 N.E.3d 411, 428 (Ohio Ct.App. 4th Dist.2014) (quotation and citation omitted). Damage to the plaintiff is an essential element of a breach of fiduciary duty claim. *Newcomer v. Nat'l City Bank,* 19 N.E.3d 492, 507 (Ohio Ct.App. 6th Dist.2014) (citing *Strock v. Pressnell,* 38 Ohio St.3d 207, 527 N.E.2d 1235, 1243 (1988)). More fundamentally, the Sixth Circuit has emphasized that "Ohio law requires proof of damages to the corporation before a shareholder's derivative action can be maintained." *Brown v. Ferro Corp.,* 763 F.2d 798, 802–03 (6th Cir.1985) (citing *Barsan v. Pioneer Savings and Loan Co.,* 163 Ohio St. 424, 127 N.E.2d 614 (1955)).

Defendants contend that Plaintiff has failed to establish injury to Big Lots

resulting from the purported insider trading activities of the individual Defendants, a flaw fatal to Count III. The Court agrees. As an initial matter, insider trading does not directly involve the corporation whose shares are traded. Rather, corporate insiders use material, non-public information to unfairly profit by buying or selling shares of the stock in secondary markets, causing harm to counterparties to the transactions who lack the same level of information. Additionally, while a corporation could in theory be damaged by the disclosure of confidential corporate information, insider trading only involves the exploitation of such information, not its direct disclosure to third parties. Further, insider trading involves the exploitation of corporate information in a manner that would also be illegal if done by a corporation itself. The Seventh Circuit summarized these characteristics of insider trading in *Freeman v. Decio,* 584 F.2d 186 (7th Cir.1978):

> If the corporation were to attempt to exploit such non-public information by dealing in its own securities, it would open itself up to potential liability under federal and state securities laws, just as do the insiders when they engage in insider trading. This is not to say that the corporation does not have any interests with regard to such information. It may have an interest in either preventing the information from becoming public or in regulating the timing of disclosure. However, insider trading does not entail the disclosure of inside information, but rather its use in a manner in which the corporation itself is prohibited from exploiting it.

*Id.* at 194.

Even if it were possible for insider trading in a vacuum to cause harm to the corporation whose shares are traded, a review of Count III and the Complaint in general reveals only conclusory allegations of direct harm to Big Lots resulting from the insider trading. *See* Compl. ¶ 81, ECF No. 1. There are likewise no allegations that Big Lots itself was a party to any of the stock sales made by the individual Defendants or that they otherwise disclosed valuable corporate information to third parties. Additionally, Plaintiff cites no Ohio cases holding that insider trading per se causes damage to the corporation whose shares are traded. For these reasons, Plaintiff has failed to sufficiently allege an essential element of Count III, and it must be dismissed for failing to state a claim upon which relief can be granted.

The above rationale applies equally to Counts I, II, and VIII, which the Court also dismisses. Count I alleges that the individual Defendants breached their fiduciary duties by disseminating false information about Big Lots. Again, however, Plaintiff does not explain how disseminating such information could directly cause harm to Big Lots itself and supports his claim with only a conclusory allegation of damages. *See id.* ¶ 73. The allegations supporting Count I are also couched in terms concerning Big Lots' shareholders and not Big Lots itself. *See id.* ¶ 71 ("each of the Defendants had a duty to ensure that Big Lots disseminated accurate, truthful and complete information to its *shareholders* " (emphasis supplied)).

Count II alleges a breach of fiduciary duty based on failure to maintain internal controls. As with Counts I and III, the damages element of this claim is supported by only one conclusory allegation, *id.* ¶ 77, and Plaintiff has not explained how failure to maintain the controls in and of itself damaged Big Lots. Stated differently, the end result of failure to maintain the controls purportedly was the insider trading and dissemination of false information, but the Court has already determined that these did not injure Big Lots. Finally, Count VIII asserts a breach of fiduciary

duties based on failure to follow internal company policies. Again, only a single, conclusory allegation supports the damage element of this claim, *id.* ¶ 106, and it is unclear how violating the internal policies through insider trading could independently harm Big Lots if the insider trading itself did not. Alternatively, Plaintiff has cited no authorities recognizing a separate claim under Ohio law for breach of fiduciary duties arising from violations of internal corporate policies.

## C. Count IV

Count IV of the Complaint is a claim for unjust enrichment arising from the alleged insider trading. "Unjust enrichment occurs when 'a person has and retains money or benefits which in justice and equity belong to another.'" *Smith v. Vaughn,* 174 Ohio App.3d 473, 882 N.E.2d 941, 944 (1st Dist.2007) (quoting *Johnson v. Microsoft Corp.,* 106 Ohio St.3d 278, 834 N.E.2d 791, 799 (2005) (internal quotation and citation omitted)). The necessary elements of a claim for unjust enrichment include: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Grey v. Walgreen Co.,* 197 Ohio App.3d 418, 967 N.E.2d 1249, 1255 (8th Dist.2011). Defendants argue that this count should be dismissed because the profit generated by the alleged insider trading of the individual Defendants cannot be considered a benefit conferred on them by Big Lots. The Court again agrees.

As Plaintiff seeks return to Big Lots of the illegal profits allegedly made by the individual Defendants through insider trading, Compl. ¶ 84, ECF No. 1, the Court considers those profits to be the "benefit" identified by Plaintiff in support of his claim. As stated in Part III.B *su-*

*pra,* the Complaint contains no allegations that any of the suspicious sales of stock made by the individual Defendants were actually made to Big Lots. As such, Big Lots cannot be said to have conferred benefits on Defendants in the form of money in excess of what the stock would have sold for had Big Lots' true financial condition been known to the market. Rather, assuming that the individual Defendants did engage in insider selling, their illicit profits were derived from the market participants who purchased their stock at inflated values.

Absent Big Lots' direct involvement in the transactions, Plaintiff's theory of unjust enrichment hinges solely on the possibility that Big Lots, as a passive, non-party to the stock sales, could be said to have conferred a benefit on Defendants in the form of the illicit profits. To say that Big Lots as a non-party to any of the transactions had anything to do with the profits derived, however, stretches the elements of unjust enrichment past their semantic breaking point, and Count IV must accordingly be dismissed for failing to state a viable cause of action. Further, Plaintiff cites no cases holding that a corporation can maintain a viable unjust enrichment claim against individuals who have engaged in insider trading of that corporation's stock.

## D. Counts V & VI

Counts V & VI allege causes of action for abuse of control and gross mismanagement. As noted by Defendants and conceded by Plaintiff, these claims present theories under which fiduciary duties can be breached rather than separate causes of action. *See In re Keithley Instruments, Inc.,* 599 F.Supp.2d 875, 903 (N.D.Ohio 2008) ("under Ohio law, corporate waste and gross mismanagement are ways in which fiduciary duty can be

breached, not separate causes of action independent of a fiduciary breach"). Plaintiff maintains the same arguments in support of these Counts as he made in support of his other claims for breach of fiduciary duties, *see* Resp. at 26 n. 18, ECF No. 28, and for the same reasons, these claims must also be dismissed. Counts V & VI do not adequately allege injury to Big Lots itself resulting from the purported improper activities of the individual Defendants.

### E. Count VII

Count VII alleges a claim for corporate waste arising from the $99 million in stock repurchases made by Big Lots during the first quarter of fiscal year 2012.

■■■ The fiduciary duties of corporate directors include a duty not to waste corporate assets. *In re Nat'l Century Fin. Enters., Inc.*, 617 F.Supp.2d 700, 718 (S.D.Ohio 2009). A claim for corporate waste also presents one way in which fiduciary duties can be breached. *Keithley Instruments*, 599 F.Supp.2d at 903. As such, the Court will consider Count VII to be a claim for breach of fiduciary duties under the alternative theory that, by allowing the stock repurchases to occur, the individual Defendants wasted corporate funds.

Repurchases of Company stock authorized by Big Lots' directors between March 2, 2012 and April 23, 2012 at market rates inflated by the Company's failure to disclose its true financial condition would constitute injury to Big Lots sufficient to establish the third element of a claim for breach of fiduciary duty and the fundamental prerequisite for bringing derivative claims under Ohio law. Accordingly, Plaintiff's claim for corporate waste does not suffer from the same defects as Plaintiff's other fiduciary duty claims.

■■■ However, a lack of detailed allegations concerning the timing of the purchases during the first quarter of 2012 necessitate dismissal of Count VII for failure to state a claim. In this regard, the Complaint, while alleging that stock repurchases in the amount of $99 million occurred during the first quarter of 2012, does not contain any allegations as to the specific time during that quarter when the repurchases were made. This flaw becomes significant when considering that Plaintiff's claims of insider trading coincide with a precise period of time during the first quarter when he alleges that Defendants denied the market relevant information concerning Big Lots' financial performance. This period began on March 2, 2012 and ended on April 23, 2012 with the downgrade of the projections made on March 2nd. The lack of specific information in the Complaint concerning the timing of Big Lots' repurchases prevents the Court from concluding Plaintiff pleaded a legally sufficient claim for corporate waste. For instance, had the purchases been made after April 23, 2012, when market forces had adjusted the stock price to reflect Big Lots' true financial circumstances, it could not be said that the repurchases wasted corporate assets.[1] For these reasons, the Complaint lacks sufficient factual matter to render Plaintiff's claim for corporate waste plausible.

### F. Count IX

■■■ Count IX of the Complaint alleges that through their insider trading activities, the individual Defendants violated the Ohio Uniform Trade Secrets Act, Ohio Revised Code §§ 1333.61–1333.69. Under the

---

1. There is nothing in the Complaint to suggest that any other aspect of the stock repurchases, other than the possibility that they were made at wrongfully inflated market prices, was wasteful.

Uniform Trade Secrets Act, a plaintiff is entitled to recover damages for the "misappropriation" of a "trade secret." *See* Ohio Rev.Code § 1333.63(A). The Act defines a "trade secret" as:

> information, including ... any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> > (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> >
> > (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* § 1333.61(D). The term "misappropriation" is defined to include:

> (2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:
>
> > (a) Used improper means to acquire knowledge of the trade secret;
> >
> > (b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;
> >
> > (c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

*Id.* § 1333.61(B)(2). The Act defines the term "improper means" to include "breach or inducement of a breach of a duty to maintain secrecy." *Id.* § 1333.61(A).

Plaintiff's theory of misappropriation is that the individual Defendants used trade secrets in the form of confidential financial information to further their insider trading scheme. Such use was through improper means given Defendants' duty to maintain the secrecy of the information. However, Count IX fails to state a claim for the same reasons as Counts I, II, III, V, VI, and VIII—the alleged insider trading of the individual Defendants did not cause injury to Big Lots. Accordingly, Count IX does not meet the prerequisite of damage to the corporation that must be established by a plaintiff before a derivative suit can be maintained on behalf of an Ohio corporation. *Brown,* 763 F.2d at 802–03.

In the alternative, Plaintiff cites no cases under which an Ohio court has ever interpreted the Uniform Trade Secrets Act to include financial information used by corporate insiders for the purposes of insider trading. In the Court's view, such an interpretation poses conceptual difficulties when applied to the facts of this case. First, it is unclear how the inside information could be deemed to possess independent economic value given that Big Lots itself could not legally exploit it to profit in the stock market. Second, Plaintiff's insider trading allegations are fundamentally based on the premise that the individual Defendants wrongfully withheld information from the marketplace, resulting in an overvaluation of Big Lots' stock. The idea that Defendants had an obligation to publicly disclose the downward trend of Big Lots' finances is in obvious tension with the Uniform Trade Secrets Act's requirement to maintain secrecy of the information.

For these reasons, Plaintiff's cause of action for violations of the Ohio Uniform Trade Secrets Act fails to state a claim

upon which relief can be granted. The Court declines to address Defendants' argument that the Act preempts Plaintiff's other claims.

## IV. CONCLUSION

For the above-stated reasons, Defendants' Motion to Dismiss the Verified Shareholder Derivative Complaint, ECF No. 23, is **GRANTED.** Counts I, II, III, IV, V, VI, VIII, and IX are **DISMISSED WITH PREJUDICE.** Count VII is **DISMISSED WITHOUT PREJUDICE.** Within twenty-one days from the date of entry of this Opinion and Order, Plaintiff may move the Court for leave to amend the Complaint with regard to (1) the issue of whether Defendants wrongfully declined to initiate litigation in response to Plaintiff's demand letter; and (2) Count VII. If Plaintiff fails to do so, this matter shall be closed.

**IT IS SO ORDERED.**