[Cite as *Columbia Dev. Corp. v. Krohn*, 2014-Ohio-5607.]



D108965032

IN THE COURT OF APPEALS FIRST

APPELLATE DISTRICT OF OHIO

HAMILTON COUNTY

ENTERED

DEC 19 2014

COLUMBIA DEVELOPMENT
CORPORATION,

    Plaintiff-Appellee,

- vs-

MARC KROHN, RECEIVER, et al.,

    Defendants-Appellants.

CASE NO. C1300842

OPINION

CIVIL APPEAL FROM HAMILTON COUNTY COURT OF COMMON PLEAS .
Case No. A1201721

Frost Brown Todd, LLC, Douglas R. Dennis, James C. Frooman and Ali Razzaghi, 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202, for plaintiff-appellee

Barrett & Weber, LPA, C. Francis Barrett, 500 Fourth & Walnut Centre, 105 East Fourth Street, Cincinnati, Ohio 45202, for plaintiff-appellee

Michael R. Schmidt and RobertS. Rubin, 250 East Fifth Street, Suite 2350, Cincinnati, Ohio 45202, for defendants-appellants

Miller Canfield Paddock & StonPLC, Paul E. Per \and Matthew C. Steele, 511 Walnut Street, Suite 1900, Cincinnati, Ohio 45202, for defend,nts-appellants

**M. POWELL, J.**

{1}    Defendants-appellants, NNN 250 East Fifth Street, LLC and 34 related entities

(NNN), by and through their Receiver, Marc A. Krohn, appeal a decision of the Hamilton

County Court of Common Pleas granting partial summary judgment in favor of plaintiff-appellee, Columbia Development Corporation (Columbia), on NNN's counterclaim for tortious interference with contract. For the reasons stated below, we affirm the decision of the trial court.

{2} Columbia is the title holder and ground landlord for the land on which the Chiquita Center (Building) is located. NNN is the current ground tenant. The landlord/tenant relationship between the parties is governed by a lease entered into by NNN's predecessor-in-interest and Columbia on April29, 1982 (Ground Lease). The Ground Lease provides that NNN may sublease its interest in the Building.and that NNN and subtenants may install signage on the Building subject to compliance with applicable regulations and laws.

{3} On May 27, 2005, NNN entered into a sublease agreement with Deloitte **LLP** (Deloitte), whereby Deloitte became a tenant occupying four floors of the Building (Deloitte Lease). The lease gave Deloitte exclusive signage rights. On December 2, 2011, the Deloitte Lease was amended by a letter (Letter Agreement). The Letter Agreement preserved Deloitte's signage rights in conjunction with Deloitte's agreement to permit a new Building tenant, The Nielsen Company (Nielsen), to erect a sign on the east fagade of the Building. Pursuant to the Letter Agreement, Deloitte was entitled to offsets in rent in the event that installation of a Nielsen sign on the Building would prevent installation of a sign on. the Building by Deloitte (Rent Credit Provision).

{4} In 2012, Nielsen began the process of erecting its sign on the Building. To erect the sign, Nielsen and NNN sought a Notwithstanding Ordinance for a variance from the Cincinnati Zoning Code 1411-39(f), which provides that only the "principal occupant" of a building, as determined by the building owner, may display a sign. NNN, acting as owner of the Building, determined that Nielsen was not the "principal occupant." Therefore, a Notwithstanding Ordinance was sought so that Nielsen would be able to erect its sign.

Nielsen was granted a Notwithstanding Ordinance and erected a sign on the east fa<;:ade of the Building in March 2012.

{'if 5}   In response to Nielsen's erection of the sign, Columbia filed a lawsuit against NNN and the City of Cincinnati seeking a temporary restraining order, preliminary injunction, and permanent  injunction to enjoin the display of Nielsen's sign on the Building (Nielsen Injunction Motion).  Deloitte was not a party to this lawsuit.

{'if 6}   NNN and Columbia engaged in discovery regarding the Nielsen Injunction Motion.  During discovery, Columbia subpoenaed Deloitte for information related to Deloitte's signage rights on the Building.  On April 5, 2012, Mr. Ronald Joseph, president of Columbia, was deposed.  During the deposition, Mr. Joseph stated that he objects to "anyone putting signage on.the building" because  in his opinion "it degrades the value of the building  * * * it degrades the building from the neighborhood that we occupy throughout the area."  After the· deposition was completed, Deloitte provided a copy of the Deloitte Lease and a copy of the Letter Agreement, with the Rent Credit Provision redacted.

{'if 7}   On May 3, 2012, Columbia's counsel sent a letter to NNN's counsel  which reiterated Columbia's objection to the Nielsen sign. The letter stated that Columbia objected to any signage installed by other tenants and intended  to "vigorously litigate" this issue. Columbia  copied the letter to Deloitte's counsel.   Due to this letter, Deloitte delayed  the planned  installation of its sign on the Building.

{'if8}   On May 17, 2012, NNN filed a counterclaim  against Columbia alleging  that Columbia  had tortiously interfered with the Letter Agreement  between NNN and Deloitte regarding Deloitte's signage rights at the Building.  Attached to the counterclaim was an un-·redacted copy of the Letter Agreement disclosing the Rent Credit Provision to Columbia.

{'if 9}   On June 18, 2012, the trial court denied the Nielsen Injunction Motion.  The court reasoned that Nielsen was permitted to erect the sign because Nielsen and NNN

sought a Notwithstanding Ordinance for a variance from Section 1411-39(f) of the Zoning Code. In so holding, the court noted that while the issue of whether Columbia or NNN owns the Building is "hotly contested," ownership is not determinative because the Ground Lease authorized NNN to seek a Notwithstanding Ordinance in the name of Columbia. Therefore, Columbia did not have standing to contest this action because it had "bargained away any rights with respect to signage issues in exchange for significant ground rent."

{10} NNN joined Deloitte as a party to the action on June 21, 2012. On June 29, 2012, Deloitte notified Columbia of its intention to install its sign the following week. On July 2, 2012, Columbia sent a letter to the City of Cincinnati referencing Section 1411-39(f) of the Zoning Code which discusses signage rights of a building's principal occupant and declaring itself the owner of the Building, the "principal occupant" of the Building, and revoking all prior designations of "principal occupant."

{11} On July 3, 2012, Columbia filed a motion for a temporary restraining order and a preliminary injunction to prevent the erection of the Deloitte sign (Deloitte Injunction Motion). Columbia's motion for a temporary restraining order was granted on July 9, 2012. However, the trial court ultimately denied the Deloitte Injunction Motion on December 10, 2012.

{12} In denying the Deloitte Injunction Motion, the court addressed the issue of ownership of the Building and determined that for purposes of Section 1411-39(f), Columbia was not the owner of the Building. Therefore, Columbia's action in declaring itself owner of the Building and the "principal occupant" under Section 1411-39(f) was not valid. Instead, NNN, as owner of the Building, could determine Deloitte is the "principal occupant" and permit it to erect its sign.

{13} Thereafter, Columbia moved for partial summary judgment on NNN's tortious interference with contract claim. NNN opposed Columbia's summary judgment motion. On

December 9, 2013, the trial court granted Columbia's motion for partial summary judgment. In granting summary judgment, the court observed that the deposition testimony of Mr. Joseph, the president of Columbia, could not support NNN's tortious interference claim because the deposition was taken before Columbia received the Deloitte Lease or the Letter Agreement. However, the court noted that the issue of whether Columbia had knowledge of these contracts was immaterial because NNN did not meet the other elements of the tort. Specifically, NNN did not establish that (1) Columbia's actions were intended to procure an interference with the contractual rights of NNN, or (2) Columbia's efforts to preserve its perceived legal rights to controlling signage on the Building were not legally justified.

{14} On behalf of NNN, the Receiver now appeals the trial court's summary judgment deCision, asserting the following sole assignment of error:

{15} THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF COLUMBIA ON [NNN'S] CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT BECAUSE THERE ARE NO GENUINE ISSUES OF MATERIAL FACT IN DISPUTE.

{16} NNN challenges the trial court's grant of summary judgment in favor of Columbia on NNN's tortious interference with contract claim. NNN argues there are four acts committed by Columbia that tortiously interfered with NNN's contractual relationship with Deloitte. These acts are (1) Mr. Joseph's statement at the April 5th deposition that he objects to signage because it diminishes the value of the Building, (2) Columbia's May 3rd letter stating an objection to signage and an intent to "vigorously litigate" the issue, (3) Columbia's July 2nd letter to the City of Cincinnati designating itself as "principal occupant" of the Building, and (4) Columbia's filing of the Deloitte Injunction Motion. NNN argues that these actions demonstrate that Columbia intentionally procured the breach of contract between Deloitte and NNN and that Columbia was not legally justified or privileged in its actions.

Additionally, NNN maintains that Mr. Joseph's deposition should have.been considered in support of the tortious interference claim even though Mr. Joseph did not receive the Deloitte Lease or the Letter Agreement before his deposition..

{'J 17} In order to establish that it was entitled to summary judgment, Columbia was required to establish (1) that there was no genuine issue as to any material fact, (2) that it was entitled to judgment as a matter of law, and (3) that reasonable minds could come to but one conclusion, and that that conclusion is adverse to the nonmoving party. *See Bostic v. Connor,* 37 Ohio St.3d 144 (1988). Once a motion for summary judgment has been made and supported as provided in Civ.R. 56(C), the nonmoving party has a reciprocal burden to set forth specific evidentiary facts showing the existence of a genuine issue for trial, and cannot rest on the allegations or denials in the pleadings. *Wing v. Anchor Media, Ltd. of Texas,* 59 Ohio St.3d 108, 111 (1991). But, if the moving party does not meet its initial burden, no duty arises on the part of the responding party to produce evidence in opposition to the motion, and the motion must be denied. *Stinespring v. Natorp Garden Stores,* 127 Ohio App.3d 213, 216 (1st Dist.1998), citing *Vahi/a v. Hall,* 77 Ohio St.3d 421, 430 (1997).

{'J 18} The elements of tortious interference with contract are (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages. *Alexander v. Motorists Mut. Ins.* Co., 1st Dist. Hamilton No. C-110836, 2012-0hio-3911,1!33, citing *Kenty v. Transamerica Premium Ins.* Co., 72 Ohio St.3d 415 (1995), paragraph two of the syllabus.

**Intentional Procurement of Contract's Breach**

{'J 19} NNN argues that the four acts committed by Columbia, Mr. Joseph's deposition, the May 3rd letter threatening to "vigorously litigate" signage, the July 2nd letter to the City of Cincinnati, and Columbia's filing of the Deloitte Injunction Motion, establish that Columbia

intentionally procured Deloitte to breach its contract with NNN by preventing Deloitte from installing signage. Columbia responds by asserting that none of these actions amounted to an intentional procurement of breach of the contract and that some of the actions occurred before Columbia became aware of the Rent Credit Provision.

{20} The third element of tortious interference with contract is the "wrongdoer's intentional procurement of the contract's breach." *Alexander,* 2012-0hio-3911 at 1[33. To satisfy this element, it is essential that the plaintiff show that the defendant *intended* to cause a breach of contract. *Gosden v. Louis,* 116 Ohio App. 3d 195, 224 (9th Dist.1996), citing Restatement of the Law 2d, Torts, Section 766, Comment h (1979)("[i]f the actor does not have this intent, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other.").

{21} In arguing that it did not intentionally procure the breach of the contract between NNN and Deloitte, Columbia asserts that two of the four actions NNN relies upon occurred before Columbia knew of the existence of the contract, or a vital portion of the contract, between NNN and Deloitte. Specifically, Columbia argues that Mr. Joseph's April 5th deposition testimony and Columbia's May 3rd letter, occurred before Columbia knew of the Rent Credit Provision contained in the Letter Agreement. Columbia maintains that the breach of contract was not "Deloitte's inability to put up a sign" but instead the breach occurred only when "Deloitte withholds rent under the Rent Credit Provision-a provision concealed from Columbia." Therefore, because NNN cannot establish the second element of the tort with respect to these actions (i.e., that Columbia knew of the Rent Credit Provision), NNN cannot rely upon these acts to show that Columbia intentionally procured the contract's breach. The evidence demonstrates that Columbia was not provided with the un-redacted Letter Agreement containing the Rent Credit Provision until NNN filed its counterclaim against Columbia on May 17, 2012. However, as the trial court observed,

"[w]hether such knowledge is required to support [NNN's] counterclaim is immaterial" because NNN has failed to put forth evidence that demonstrates that Columbia's actions were *intended* to procure Deloitte's breach of the Letter Agreement.

{22} Upon a thorough review of the record, the evidence demonstrates that Columbia's actions were not intended to procure Deloitte to breach the Letter Agreement with NNN. Instead, the evidence establishes that Columbia was merely trying to enforce its perceived legal rights in prohibiting signage on the Building under the Ground Lease entered into by Columbia and NNN. Mr. Joseph's deposition was in regards to the Nielsen Injunction Motion and he was merely expressing his opinion regarding the effect of signage on the value of the Building. The two letters sent by Columbia were Columbia's attempt to enforce its perceived legal rights under the Ground Lease and the Cincinnati Zoning Code. Similarly, in filing the Deloitte Injunction Motion, Columbia was seeking to enforce its understanding of the Ground Lease with NNN. Columbia never sought to encourage Deloitte to assert its rights to the Rent Credit Provision or to prevent Deloitte from erecting a sign apart from the Deloitte Injunction Motion. As the trial court noted: "Quite simply, Columbia's objection to signage on the Building does not, in and of itself, equate to an intention to procure the breach of any contract with NNN." *See Gosden,* 116 Ohio App.3d at 225 (intent not established when no suggestion by defendants that owners stop dealing with plaintiff); *N. Coast Engines, Inc. v. Hercules Engine* Co., 8th Dis!. Cuyahoga No. 89091, 2008-0hio-793, 27.

{23} Therefore, the trial court did not err in finding that Columbia did not intentionally procure the breach of contract between Deloitte and NNN.

## Lack of Justification

{24} NNN also argues that the trial court erred in finding that Columbia's actions were justified. NNN maintains that the Ground Lease, Deloitte Lease, and Letter Agreement clearly provided that Deloitte was authorized to erect signage on the Building and therefore

any actions Columbia took in preventing Deloitte from exercising its signage rights were not justified.  Additionally, NNN asserts that two of Columbia's actions, the July 2nd letter and filing the Deloitte Injunction Motion, were not legally justified because at the time of these actions, the trial court had already denied the Nielsen Injunction Motion.    Therefore, Columbia knew it did not have any legally protected interest in prohibiting signage on the Building.

{¶ 25} The fourth element of tortious interference with contract, lack of justification, requires proof that the defendant's interference with the contract was improper. *Fred Siegel Co., L.P.A. v. Arter & Hadden,* 85 Ohio St.3d 171 (1999), paragraph two of the syllabus. Ohio law places the burden of proving a lack of privilege or justification upon the plaintiff. *Alexander,* 2012-0hio-3911 at 33.

{¶ 26} The Restatement of the Law 2d, Torts, Section 773 (1979), addresses this element of the tort and provides: "One is privileged purposely to cause another not to perform a contract, or enter into or continue a business relation, with a third person by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes  may otherwise be impaired or destroyed by the performance of the contract or transaction."  *See C/auder v. Holbrook,* 1st Dist. Hamilton No. C-990145, 2000 WL 98218, *3 (Jan. 28, 2000); *Ament v. Reassure Am. Life Ins.* Co., 180 Ohio App. 3d 440, 2009-0hio-36, 62 (8th Dist.); *Reali, Giampetro & Scott v. Soc. Nat/. Bank,* 133 Ohio App.3d 844, 853 (7th Dist.1999).

{¶ 27} In the case at bar, the Ground Lease between NNN and Columbia provided that NNN and subtenants may install signage on the Building subject to compliance  with applicable regulations and laws.  In 2005, NNN entered into the Deloitte Lease, with NNN subleasing a portion of the Building to Deloitte.  The Deloitte Lease gave Deloitte exclusive signage rights.   Later, the Deloitte Lease was amended by the Letter Agreement which

preserved Deloitte's signage rights in return for Deloitte's agreement that Nielsen could also erect a sign on the Building.

{¶ 28} In 2012, Columbia filed two separate actions regarding its signage rights, the Nielsen Injunction Motion and the Deloitte Injunction Motion.  At issue in both motions was whether signage was permitted under Section 1411-39(f) of the Cincinnati Zoning Code. Section 1411-39(f) permits, "[o]ne trademark or building identification sign identifying the principal occupant as determined by the building owner of a building***."  The trial court denied both injunction motions.  In denying the Nielsen Injunction Motion, the court found that the installation of the sign complied with Section 1411-39(f) because NNN was permitted under the Ground Lease to seek a variance from the Zoning Code in the name of Columbia. In denying the Deloitte Injunction Motion, the court found that for purposes of Section 1411-39(f), Columbia was not the "owner" of the Building and did not have the right to designate itself as the "principal occupant."  In its decision regarding the Deloitte Injunction Motion, the court noted that "with respect to Columbia's previous motion regarding the Nielsen signage, the Court was not called upon to determine ownership of the Building in order to determine that [NNN] was within its rights to seek a Notwithstanding Ordinance permitting Nielsen to erect signage on the fagade of the building***."

{¶ 29} After a review of the record, we find Columbia's objections to Deloitte's signage rights were privileged and asserted in good faith.  Columbia had a privilege to protect its perceived legal rights in prohibiting signage on the Building and all of its actions were legally justified.. NNN maintains that the Ground Lease, Deloitte Lease, and Letter Agreement so clearly provided that Deloitte was authorized to erect signage on the Building that any action Columbia took in preventing Deloitte from exercising its signage rights was not privileged. However, while these documents did provide that NNN and Deloitte could erect signage, the Ground Lease stated that the installation of signage is subject to compliance with applicable

regulations and laws. In this case, there was an issue regarding whether Section 1411-39(f) permitted signage. The trial court initially found that for purposes of a temporary restraining order, Columbia's argument that Section 1411-39(f) did not permit signage had merit and temporarily prohibited the erection of Deloitte's sign.

{30} Additionally, Columbia's actions in sending the July 2nd letter to the City of Cincinnati and filing the Deloitte Injunction Motion, after the Nielsen Injunction Motion was denied, were also privileged and justified. In the Nielsen Injunction Motion, the trial court was not called upon to determine ownership of the Building because the court determined that the action of NNN and Nielsen in seeking a Notwithstanding Ordinance was permitted under the Ground Lease. In contrast, the issue of ownership was central to the denial of the Deloitfe Injunction Motion. At the time of the July 2nd letter and the filing of the Deloitte Injunction Motion, Columbia's status as "owner" of the Building for purposes of Section 1411-39(f) had yet to be determined. Further, Columbia never sought to encourage Deloitte to assert its rights to the Rent Credit Provision or prevent it from erecting its signage separate and apart from the Deloitte Injunction Motion and all of Columbia's actions were preliminary to the litigation or pursuant to the litigation.

{31} NNN cites *GZK, Inc. v. Schumaker Partnership,* 2d Dis!. Montgomery No. 22172, 2008-0hio-1980, for the proposition that actions such as those undertaken by Columbia present genuine issues of material fact regarding whether such actions were legally justified. However, in contrast to the actions of Columbia, which were all preliminary or pursuant to this litigation, the defendant in *GZK* engaged in numerous efforts, many of which were not related to the litigation. These actions included sending threatening letters to the third party, filing the lawsuit, negotiating a second contract with the third party and the third party's breach of contract with the plaintiff. *GZK* at 137-138.

{32} Thus, Columbia's actions were privileged as it was acting in good faith to

protect its perceived legal interests.  Consequently, the trial court did not err in finding that Columbia's actions were legally justified.

### Mr. Joseph's Deposition

{33} NNN argues that the trial court erred when it determined NNN could not rely upon Mr. Joseph's deposition testimony to support its tortious interference claim because NNN did not provide copies of the Deloitte Lease and Letter Agreement to Columbia until after the deposition.  NNN maintains that Mr. Joseph's testimony shows that Columbia "intended to procure Deloitte's breach" and "possessed no legal justification for such interference."

{34} The second element of tortious if!terference with contract requires that the defendant is aware of the existing contract.  *Alexander,* 2012-0hio-3911 at 33.     In recognizing the tort of interfering with contract, the Ohio Supreme Court adopted Restatement of the Law 2d, Torts, Section 766 (1979).  *Kenty,* 72 Ohio St.3d at 419.  The Restatement specifically addresses the actor's knowledge of the other's contract and provides that for an alleged tortfeasor "[t]o be subject to liability * * * the actor must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract."  *Crown Equip. Corp. v. Toyota Material Handling, U.S.A., Inc.,* 6th Cir. No. 05-4476, 2006 WL 3044430 (Oct. 27, 2006), quoting Restatement, Section 766, Comment i. ·A tortious interference with contract claim must fail if a plaintiff does not prove that a defendant was aware of the contract between the plaintiff and the third party. *Akron Group Services, Inc. v. Patron Plastics, Inc.,* 9th Dist. Summit No. 22507, 2005-0hio-5101' 22, 28.

{35} Mr. Joseph was deposed on April 5, 2012.    At the time of Mr. Joseph's deposition, Columbia had only filed the Nielsen Injunction Motion.  During the deposition, Mr. Joseph was asked what his specific objections were to the Nielsen sign.  He responded by

stating:

> My specific objections are to the signage of anyone putting signage on the building. In my opinion, it degrades the value of the building, and it's contrary to the understanding we have with the Urban Renewal Department * * * I think it degrades the building from the neighborhood that we occupy throughout this area***.

Later, Mr. Joseph testified that he believes signage is "wrong and detracts from the building where we need substantial tenants for the stream of income which benefits members of our family."

{36} We are unpersuaded by NNN's argument that the trial court erred in refusing to consider Mr. Joseph's deposition because it was taken before Columbia or Mr. Joseph became aware of the Deloitte Lease, Letter Agreement, and Rent Credit Provision. In the court's decision granting Columbia's motion for partial summary judgment, the trial court specifically discussed the second, third, and fourth elements of tortious interference with contract. In regards to the second element, the defendant's knowledge of the existing contract, the trial court noted that Deloitte did not provide Columbia with copies of the Deloitte Lease and Letter Agreement until after Mr. Joseph's deposition. Therefore, the court concluded that "NNN cannot rely upon Mr. Joseph's deposition testimony to support its tortious interference claim." The court continued by discussing the issue of when Columbia became aware of the Rent Credit Provision in the Letter Agreement and then stated, "[w]hether such knowledge is required to support [NNN's] counterclaim is immaterial to the Court's decision herein because, as set forth below, the Court finds that Columbia's actions were not intended to procure Deloitte's breach of the Letter Agreement." Though this statement was made in the context of the specific Rent Credit Provision, this statement also equally applies to knowledge of the Deloitte Lease and Letter Agreement; whether this knowledge is required to support the second element of the tortious interference claim is

immaterial because NNN failed to prove the remaining elements.

{37} On appeal, NNN's specific argument is that the trial court erred when it refused to consider Mr. Joseph's deposition testimony in regard to the third and fourth elements; the intentional procurement of the contract's breach and the absence of justification or privilege. While the trial court concluded in its discussion of the second element that NNN could not rely on Mr. Joseph's deposition to support its entire tortious interference claim, the court's decision makes it evident that it considered the deposition in its analysis of the third and fourth elements.

{38} In discussing whether Columbia intentionally procured the breach of the contract between Deloitte and NNN, the court stated: "[NNN] contends that Columbia's intent to procure the breach of the signage provision of the Deloitte Lease and Letter Agreement can be directly inferred from Mr. Joseph's deposition testimony that Columbia would object to anyone putting signage on the Building without its consent***." The court listed a number of other actions that NNN argued demonstrated Columbia's intent to procure a breach of contract and concluded, "However, as Columbia points out, none of these actions indicate an intent to procure Deloitte's breach of its contract with [NNN]."

{39} In regards to the absence of justification or privilege, the court stated:

> Similarly, for much the same reason as the Court finds Columbia's objection to building top signage does not evidence an intention to procure Deloitte's breach of its contract with [NNN], the Court finds that Columbia's objection and resulting litigation seeking to prevent such signage while not ultimately successfully, were taken in good faith to prevent what Columbia perceived to be its legal rights.

The court ultimately concluded that NNN "failed to offer evidence that Columbia's efforts to preserve its perceived legal rights were not legally justified." While the court did not explicitly discuss Mr. Joseph's deposition testimony, it is apparent that the court's decision considered all of Columbia's objections to signage, including Mr. Joseph's deposition testimony and

found that the fourth element was not met.

{¶40} Additionally, as discussed previously, even considering Mr. Joseph's deposition testimony, NNN did not show that Columbia intentionally procured the breach of contract between Deloitte and NNN or that Columbia's efforts in protecting its legal interest were not privileged. In his deposition, Mr. Joseph was merely expressing his opinion regarding signage on the Building and his statements were not directed toward Deloitte. Additionally, Mr. Joseph's testimony does not establish that Columbia was acting without legal justification. Columbia was privileged to protect its perceived legal rights and Mr. Joseph's deposition reflecting his personal views fails to establish that Columbia was not protecting its legal rights.

{¶41} Therefore, the trial court did not err in determining that Mr. Joseph's deposition testimony could not be used to support the tortious interference claim. Columbia's knowledge of the Deloitte Lease and Letter Agreement was immaterial because NNN failed to establish the other elements of the tort. Additionally, the court considered Mr. Joseph's deposition in its analysis and, in our de novo review of Columbia's motion for summary judgment, his testimony does not demonstrate that Columbia intentionally procured the breach of contract and Columbia's efforts were not legally justified.

## Conclusion

{¶42} In light of the foregoing, there are no genuine issues of material fact and Columbia is entitled to judgment as a matter of law in regards to NNN's tortious interference with contract claim. As such, the sole assignment of error of the Receiver, acting on behalf of NNN, is overruled.

{¶43} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.

Hendrickson, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.

S. Powell, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.

M. Powell, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.