[Cite as *Butorac v. Osmic*, 2023-Ohio-1812.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| LINDA BUTORAC, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111777 |
| v. | : | |
| HUGH OSMIC, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 1, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-881894

*Appearances:*

Schuster & Simmons Co., L.P.A., and Nancy
C. Schuster, *for appellee.*

The Saks Law Office, LLC, and Jeffrey Saks, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant, Hugh Osmic ("Hugh"), appeals the trial court's judgment denying his motions to dismiss and summary judgment on the complaint filed by appellee, Linda Butorac ("Linda"). He also challenges the trial court's denial of his

motion for directed verdict and the jury's award of damages. For the following reasons, we affirm.

**Procedural and Factual History**

{¶ 2} In 1990, Milan Osmic ("Milan") retired from Ford Motor Company and started his own business, Osmic Erectors, Inc. ("Osmic Erectors"). He intended it to be family operated, with his wife Anna Osmic ("Anna"), and children Hugh and Linda[1] all taking part in the business. Milan retired from Osmic Erectors in 1999. Around that time, Linda graduated from college with a degree in finance and a minor in economics. On graduating, Milan gave Linda three parcels of land, parcels 104-02-007 ("parcel 007"); 104-02-008 ("parcel 008"); 104-02-013 ("parcel 013"). These transfers were memorialized in deeds and recorded with the Cuyahoga County Recorder's Office; parcel 013 filed in 1999, and the joint deed for parcels 007 and 008 filed in 2000. Later, Milan gave Hugh a separate parcel where the Osmic Erectors' building was located, parcel 104-02-006. The company changed its name from Osmic Erectors to Osmic Inc.

{¶ 3} Linda functioned as the president of the company from 1999 to 2011. Her mother, Anna, functioned as vice president until shortly before her death in 2010. Linda held a 40 percent interest in the company, while Anna held a 60 percent interest. When Anna died, her shares were transferred to Milan. After Anna's death, Linda and Hugh's relationship deteriorated. Hugh had a "big" personality and often

---

[1] At trial there was a reference to another sibling, Walter; however, he was not involved in this matter.

yelled and swore at Linda while working. Linda left her position as president in 2011. In 2012 after Hugh kicked her out of the company building, Linda left the company altogether and transferred her shares to Milan. Linda decided to pursue a nursing degree, a field she became interested in while caring for her mother prior to her death.

{¶ 4} On April 8, 2013, Linda executed a real estate purchase and sale agreement selling parcels 007 and 008 to Lakeside Avenue Properties LLC ("Lakeside") for $600,000. Lakeside owned a neighboring property and hoped to use the parcels to expand its business. A closing date was set for July 26, 2013.

{¶ 5} On July 25, 2013, Osmic Inc. filed a lawsuit requesting injunctive relief to prevent the sale of the properties. At that time, Hugh was the sole owner of Osmic Inc.[2] The company's complaint alleged that there was an oral agreement between the family members regarding the parcels gifted to Linda by Milan — 007, 008, and 013. Per the complaint, this agreement placed Linda as the equitable holder of parcels 007, 008, and 013, for the benefit of Osmic Inc.

{¶ 6} Prior to finalizing the closing, Lakeside became aware of the lawsuit and agreed to extend the closing date to September 2013 to allow Linda to resolve the matter. However, Linda was unable resolve the lawsuit by the September closing date. Consequently, Lakeside withdrew its offer to purchase the properties and pursued other nearby properties.

---

[2] During trial Milan disputed that Hugh paid him for the company, however, acknowledged that ownership had transferred to Hugh.

{¶ 7} On January 8, 2014, Osmic Inc.'s original complaint was amended. Hugh was substituted as the plaintiff and the complaint was amended to claim an interest in parcel 013 based on an oral contract. On May 8, 2014, Osmic Inc. filed a motion to continue trial and leave to plead. Attached to that motion was a purported written agreement (the "family plan") dated May 3, 2001, allegedly signed by Hugh, Linda, Anna, and Milan. The document was on letterhead from the St. Paul Croatian Federal Credit Union #5049 ("St. Paul Credit Union") and titled "Land Purchase Agreement." Despite the fact that Linda had been deeded parcels 007 and 008 the year before the document was created, the document indicated that Linda "shall be granted as title holder" of the properties. Additionally, the document provided that the properties could not be sold without the agreement of all signatories as well as St. Paul Credit Union. If the parties agreed to sell the properties, the proceeds would be divided among the family members with Anna and Milan receiving 60 percent and Hugh and Linda receiving 20 percent each.

{¶ 8} On July 4, 2014, the case was dismissed without prejudice and without resolution.

{¶ 9} In the meantime, on June 20, 2014, Linda filed a complaint against Osmic Inc. and Hugh for quiet title, negligent interference with contract, intentional interference with contract, conversion/unjust enrichment, and action on a debt. The case was dismissed without prejudice on November 24, 2014, for failure to join necessary parties.

{¶ 10} Linda filed the current action on June 16, 2017. In it, she sued Hugh and requested a declaratory judgment determining that she was the sole and only owner of parcels 007, 008, and 013. She also alleged that Hugh had no legal, equitable, or beneficial present or future interest in the parcels. Furthermore, she claimed Hugh committed tortious interference with contract by filing the 2013 lawsuit that prevented her from completing her contract with Lakeside.

{¶ 11} Hugh filed a motion to dismiss the complaint on August 10, 2017. In it, among other things, Hugh argued that Linda's complaint failed to state a claim upon which relief could be granted. Specifically, with respect to the tortious interference claim, Hugh argued that he enjoyed absolute immunity to file the 2013 lawsuit because he acted in good faith to protect his interests in parcels 007 and 008. The trial court denied the motion on October 30, 2017.

{¶ 12} Hugh filed his answer on November 13, 2017. He abandoned the original argument he made in the 2013 lawsuit that there was an oral agreement among the family members. Hugh claimed that there was a written agreement created in 2001, the family plan, that gave him a 20 percent interest in parcels 007 and 008, and that he was justified in filing his 2013 lawsuit to protect his interest in the properties. Hugh filed a counterclaim that alleged breach of contract, i.e., that Linda breached the family plan; breach of good faith and fair dealing; quiet title asking the court to recognize his equitable interest in the properties; and declaratory judgment establishing (a) Hugh's interests in the property, (b) declaring the family

plan a valid contract binding on its parties, and (c) declaring that the 2013 lawsuit was in defense of his property rights and justified under the circumstances.

{¶ 13} On June 21, 2018, Hugh filed an amended answer and counterclaim and added Milan as a third-party defendant. Hugh's responses to Linda's complaint remained largely the same. In his complaint against Milan, Hugh alleged that his father was guilty of breach of contract for violating the family plan.[3]

{¶ 14} On May 31, 2019, Hugh filed a motion for partial summary judgment on the tortious interference claim. He argued that any false statements made during the 2013 litigation were not actionable. Hugh maintained that any statements he made in the prior litigation were protected and rendered him immune from a subsequent lawsuit. The trial court denied the motion on July 15, 2019.

{¶ 15} After further motion practice, a jury trial commenced on January 20, 2020. At the conclusion of testimony, Hugh moved for a directed verdict as to damages. He alleged that the evidence presented was merely speculative, and Linda had not shown damages with specificity. The trial court denied the motion. Hugh also moved for a directed verdict of the tortious interference claim. He again alleged that he was within his rights to file the 2013 lawsuit. The trial court similarly denied that motion. Finally, Hugh dismissed his claim against Milan.

{¶ 16} The case was submitted to the jury with a general verdict form and three interrogatories as follows:

---

[3] Milan filed several third-party claims against Hugh and Osmic Inc.; however, they were dismissed prior to trial.

Interrogatory 1: By a preponderance of the evidence, was there a contract between Linda Butorac, Hugh Osmic, and Milan Osmic regarding any sale and distribution of proceeds of parcels 007 and 008, which are titled to Linda Butorac?

Interrogatory 2: If you respond "No" to interrogatory No. 1, do you find by a preponderance of the evidence that Linda proved that she suffered damages as a result of Hugh's tortious interference with Linda's contract to sell parcels 007 and 008, which are titled to Linda Butorac?

Interrogatory 3: If you answered Interrogatory No. 2 "Yes," state the amount of Linda Butorac's damages.

{¶ 17} The jury unanimously voted in favor of Linda. They found that there was no contract between Linda, Hugh, and Milan regarding any sale and distribution of proceeds of parcels 007 and 008 and that Linda proved that she suffered damages because of Hugh's tortious interference with Linda's contract with Lakeside. The jury awarded damages in the amount of: "$488,801 and legal fees incurred as a result of this lawsuit."

{¶ 18} On February 21, 2020, Hugh filed a motion for judgment notwithstanding the verdict and for a new trial. Then on March 26, 2021, Hugh filed a notice of appeal. On October 5, 2021, this court remanded the case back to the trial court to clarify whether attorney fees were included in the award, and if so, the amount of the fees and whether the amount awarded was reasonable. On November 5, 2021, the trial court issued a journal entry declaring that attorney fees were not a part of the jury's award. The court noted that the jury was instructed only to determine the damages caused by Hugh's interference with Linda's contract. The trial court returned the case to the court of appeals. On March 10, 2022, this court

dismissed the appeal finding no jurisdiction because Linda's declaratory judgment claim was not resolved and thus there was no final appealable order.

{¶ 19} On July 20, 2022, the trial court entered its ruling on Linda's declaratory judgment claim. The court found that Linda was the sole and only owner of parcels 007, 008, and 013, and that Hugh had no legal or equitable interest in the properties. The trial court reiterated the jury's verdict and its ruling on damages as well.

{¶ 20} On August 8, 2022, the trial court denied Hugh's motion for judgment notwithstanding the verdict and motion for new trial.

{¶ 21} Hugh now appeals assigning the following errors for our review:

### Assignment of Error No. 1

The trial court erred in failing to grant defendant's motion to dismiss, and subsequent motions for summary judgment and directed verdict, on plaintiff's claim for tortious interference with contract when plaintiff failed to allege, and there was no evidence of, any action taken by defendant that was unjustified or otherwise tortious. The only action alleged by plaintiff is that defendant previously filed a lawsuit to quiet title, which cannot constitute tortious interference with contract as a matter of Ohio law.

### Assignment of Error No. 2

There was no legal basis to maintain any claim for tortious interference with contract against Hugh Osmic individually based upon the 2013 Quiet Title Action, which was filed by Osmic, Inc. as plaintiff.

### Assignment of Error No. 3

The jury's verdict must be vacated as against the manifest weight of the evidence because it is not discernable from the verdict that the jury did not improperly include attorneys' fees in the amount awarded, which was greater than the amount requested by plaintiff.

**Law and Analysis**

{¶ 22} In the first assignment of error Hugh alleges that the trial court erred in denying his motions to dismiss, for summary judgment, and for directed verdict on the tortious interference with contract claim. Hugh argues that all three motions should have been granted because a tortious interference claim cannot be based on the filing of a lawsuit.

{¶ 23} Accordingly, we begin by reviewing the elements of the claim. In order to prove tortious interference with contract, the plaintiff must establish (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) that the defendant lacked justification for his action; and (5) damages as a result. *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863 (1995), paragraph two of the syllabus.

{¶ 24} Hugh does not dispute the existence of the first three factors. He acknowledged that there was a contract, that he knew about it, and that he filed the 2013 lawsuit to prevent the sale from going through. Instead in this assignment of error, he focuses entirely on the fourth element, i.e., lack of justification. Here, he alleges that he was justified in filing the 2013 lawsuit because the family plan gave him an interest in parcels 007 and 008.

{¶ 25} If proven, justification is a complete defense to a claim of tortious interference with contract. The Restatement of the Law 2d, Torts notes that

[o]ne who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract * * * does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

Restatement of the Law 2d, Torts [1979], Section 773; *see also Columbia Dev. Corp. v. Krohn*, 1st Dist. Hamilton No. C1300842, 2014-Ohio-5607, ¶ 26.

{¶ 26} The plaintiff bears the burden of establishing that the defendant lacked justification to interfere in the contract. *Columbia Dev. Corp.* at ¶ 25.

{¶ 27} With this framework in mind, we will look at each of Hugh's motions in turn.

## Motion to Dismiss pursuant to Civ.R. 12(B)(6)

{¶ 28} In his August 10, 2017 motion to dismiss, Hugh argued that the claim for tortious interference with contract should be dismissed because it failed to state a claim for which relief may be granted. Hugh's motion started from the premise that his actions were in good faith, and that therefore, he was immune from suit based on the filing of the 2013 lawsuit.

*Standard of Review*

{¶ 29} We review a ruling on a motion to dismiss pursuant to Civ.R. 12(B)(6) under the de novo standard. *NorthPoint Props. v. Petticord*, 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869, ¶ 11 (8th Dist.). De novo review requires this court to use the same standard as the trial court to determine whether genuine issues exist for trial. *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Cty. Commrs.*, 121

Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997). A Civ.R. 12(B)(6) motion to dismiss "is procedural and tests the sufficiency of the complaint." *NorthPoint Props.* at ¶ 11.

{¶ 30} In reviewing the complaint, "we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party." *Id.*, citing *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991). A trial court may grant a motion to dismiss for failure to state a claim upon which relief can be granted if it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling her to relief." *Graham v. Lakewood*, 2018-Ohio-1850, 113 N.E.3d 44, ¶ 47 (8th Dist.), quoting *Grey v. Walgreen Co.*, 197 Ohio App.3d 418, 2011-Ohio-6167, 967 N.E.2d 1249, ¶ 3 (8th Dist.). Our review is limited to the four corners of the complaint and documents properly incorporated within the complaint. *Katz v. Univ. Hosps. Health Sys.*, 8th Dist. Cuyahoga No. 111164, 2022-Ohio-3328, ¶ 12.

{¶ 31} If there is a set of facts that would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss under this rule. *Id.* at ¶ 13, citing *Woods v. Sharkin*, 2022-Ohio-1949, 192 N.E.3d 1174, ¶ 29 (8th Dist.).

{¶ 32} Accordingly the complaint needed to allege 1) the existence of a contract; 2) that Hugh had knowledge of the contract; 3) that Hugh intentionally procured the contract's breach; 4) that Hugh lacked justification for his action; and 5) damages as a result. In the instant case, Linda's complaint presents sufficient facts to establish a claim for tortious interference with contract. She established the

existence of a contract by averring that she executed a Real Estate Purchase and Sale Agreement on April 8, 2013, to sell parcels 007 and 008 to Lakeside for $600,000. A copy of the purchase agreement was attached to the complaint. She established that Hugh was aware of the contract and sought to cause its breach when she averred that on July 25, 2013, he filed a lawsuit that sought an injunction to stop the sale. She established that Hugh lacked justification when she alleged that she was the sole owner of parcels 007 and 008 and attached the deed as proof of her ownership. Finally, damages were established because Hugh's actions cost her the profits of the sale.

{¶ 33} On its face, Linda's complaint pledged sufficient facts that, if true, would establish tortious interference with contract. Accordingly, the trial court did not err when it denied Hugh's motion to dismiss pursuant to Civ.R. 12(B)(6).

**Motions for Summary Judgment and Directed Verdict**

*Standard of Review*

{¶ 34} For ease of analysis, we address both the motion for summary judgment and directed verdict together. Prior to trial, Hugh filed a motion for summary judgment on the tortious interference claim that was denied. He also moved for a directed verdict on that claim after the close of testimony in the trial. Summary judgment is a pretrial motion that allows the court to consider facts outside the pleadings. *C4 Polymers, Inc. v. Huntington Natl. Bank*, 2015-Ohio-3475, 41 N.E.3d 788, ¶ 25 (8th Dist.). Civ.R. 56 provides:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

Civ.R. 56(C).

{¶ 35} We review a ruling on a motion for summary judgment de novo, utilizing the same standard as the trial court. Looking at the facts in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party, we determine whether summary judgment is appropriate. *C4 Polymers, Inc.* at ¶ 26; citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996) and *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12, 467 N.E.2d 1378 (6th Dist.1983).

{¶ 36} However, it would make little sense to say the trial court erred when it denied Hugh's motion for summary judgment when the verdict in favor of Linda established the existence of genuine issues of material fact. *Cont'l. Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 156, 642 N.E.2d 615 (1994) (it would be incongruous to say the trial court committed reversible error in denying a motion for summary judgment when the trial was resolved in favor of the nonmoving party). "Any error in the denial of the motion was rendered moot or harmless since a full and complete development of the facts at trial (as opposed to the limited factual evidence elicited

upon discovery) showed that [the prevailing party at trial was] entitled to judgment."
*Id.* Consequently, to the extent that this assignment of error challenges the trial court's denial of Hugh's motion for summary judgment, any error has been rendered moot by the jury's verdict in Linda's favor. Accordingly, we will focus on the trial court's denial of the motion for directed verdict.

{¶ 37} Once a jury has been empaneled and a trial started, a party can move for a directed verdict. *Parrish v. Jones,* 138 Ohio St.3d 23, 2013-Ohio-5224, 3 N.E.3d 155, ¶ 14. Civ.R. 50(A) governs motions for directed verdict stating:

> (4) * * * When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

Civ.R. 50(A)(4).

{¶ 38} A trial court's ruling on a motion for directed verdict is a matter of law, which the appellate court reviews de novo. *Groob v. Keybank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 14. "A directed verdict is appropriate where a plaintiff fails to present evidence from which reasonable minds could find in the plaintiff's favor." *C4 Polymers, Inc. v. Huntington Natl. Bank*, 2015-Ohio-3475, 41 N.E.3d 788, ¶ 28 (8th Dist.), citing *Hargrove v. Tanner*, 66 Ohio App.3d 693, 695, 586 N.E.2d 141 (9th Dist.1990).

*Analysis*

{¶ 39} Hugh argues that the trial court erred in denying his motion for directed verdict because Linda failed to establish that his actions in filing the 2013 lawsuit were unjustified. We disagree.

{¶ 40} The sole issue in reviewing a denial of a motion for directed verdict is, after looking at the evidence in a light most favorable to the nonmoving party, whether there are no genuine issues of material fact remaining. Here, the record established that there remained a genuine issue of material fact as to who had a genuine interest in parcels 007 and 008.

{¶ 41} The evidence reflected that Linda was the sole title holder listed on the deed for parcels 007 and 008. Linda also denied that Hugh held an interest in the properties and she denied that she agreed, either orally or in writing, to give Hugh any interest in the properties, whatsoever.

{¶ 42} Hugh countered that the family plan agreement gave him an interest in the properties that justified his behavior. The defense of justification is narrow in scope and is established only when (1) the actor has a legally protected interest, and (2) "in good faith asserts or threatens to protect it, and (3) the threat is to protect it by appropriate means." Restatement of the Law 2d of Torts, 773, Comment a.

{¶ 43} Given the foregoing, there remained a factual dispute as to whether Hugh held a legally protected interest in parcels 007 and 008. The deed named Linda as the sole owner and Hugh's interest was journalized in a document that was created after Linda acquired the properties and that Linda denied knowledge of

existing. Therefore, the trial court did not err in denying Hugh's motion for directed verdict.

{¶ 44} Nevertheless, Hugh has argued that a claim for tortious interference cannot be established when the only action alleged is the filing of a lawsuit. Furthermore, he cites several cases to support his argument. However, all the cases are distinguishable from the case at hand. In all the cases, the courts' findings were based in part on a party establishing that they had a legally protected interest that they were privileged to protect.

{¶ 45} In *Benkovits v. Bandi*, 2021-Ohio-1877, 173 N.E.3d 864 (8th Dist.), the plaintiff sued to establish his interest in Bandi's businesses. Bandi countersued for tortious interference with contract. The trial court granted summary judgment on the counterclaim and Bandi appealed. The court found that an earlier legal ruling in Benkovits' divorce, which assigned to him his wife's interests in the Bandi companies, "whatever that right might be," was enough to establish that Benkovits might have a legal interest in the Bandi companies. Therefore, the court found he was justified in filing a lawsuit to determine his interest.

{¶ 46} In *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246 (8th Dist.), the plaintiff-appellant, Dr. Ament, was the trustee of a trust agreement between himself and his deceased wife. As trustee, he sued his wife's younger sister, Young-Hee, and alleged that Young-Hee had used undue influence to induce his wife to sign over a $500,000 life insurance policy. The court found that Young-Hee was the rightful beneficiary. Dr. Ament appealed the

ruling. Young-Hee cross-appealed and alleged that the trial court erred when it granted Dr. Ament's motion to dismiss her counterclaim for tortious interference with contract. The court of appeals found that the dismissal was proper because Dr. Ament was privileged to file the lawsuit. The court noted that it was within Dr. Ament's power as trustee "to protect the Trust's interest in the insurance proceeds via a lawsuit." In other words, Dr. Ament had a legally protected interest in the trust that he was privileged to protect, even though the court noted there was a "total lack of evidence to support Dr. Ament's suit." *Id.* at ¶ 64.

{¶ 47} In *Clauder v. Holbrook*, 1st Dist. Hamilton No. C-990145, 2000 Ohio App. LEXIS 245 (Jan. 28, 2000), Clauder and Holbrook had entered into a land contract. Holbrook failed to meet certain conditions, but on the closing date he recorded a copy of the land contract. Subsequently, Clauder entered into a contract with someone else for the land. Holbrook sued for specific performance of the land contract. The court found for Clauder. Clauder subsequently sued Holbrook for tortious interference with contract. The court sided with Holbrook. The court found that he was privileged to file the lawsuit to protect his interest in the land as established by the land contract.

{¶ 48} In *Arms Trucking Co. v. Fannie Mae*, 11th Dist. Geauga No. 2014-G-3186, 2014-Ohio-5077, the court of appeals affirmed the dismissal of the complaint under Civ.R. 12(B)(6) because the counterclaim failed to allege that *Arms Trucking* had no interest in the property or other facts to establish a claim of tortious

interference with contract. This ruling was based on the insufficiency of the pleading not the filing of a lawsuit.

{¶ 49} Finally, Hugh cites *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 651 N.E.2d 1283 (1995), however, that case primarily deals with defamation. At its core the case addresses privilege from a very different perspective than in this case. Ultimately, the court found that a union contractor's statements to government officials that were intended to interfere with Abell's contract with the city were privileged. That privilege was seated in public policy that recognized that statements should be protected when they provide information to government officials to aid in decision-making. When this type of privilege is attached, the court found that a plaintiff must establish actual malice to overcome the privilege. In that context the court noted that

> [t]he question here * * * is whether the actual-malice standard required to defeat a qualified privilege in a defamation claim * * * must be met for tortious interference and disparagement claims based on the same protected conduct or statements. We hold that it does.

{¶ 50} Contrary to Hugh's assertion, none of these cases stand for the proposition that a lawsuit can never be the basis of a tortious interference claim.

{¶ 51} In each case cited by Hugh, the holding was not, as Hugh claims, that tortious interference cannot be proven when the only conduct alleged is that a party filed a lawsuit. The holdings are that a person who has established a legally protected interest may file a lawsuit to protect that interest, even if the allegations in the lawsuit are spurious. Here, the facts presented at trial left open the question

of whether Hugh had a legitimate interest in parcels 007 and 008. Accordingly, there remained a genuine issue of material fact as to whether Hugh's conduct was protected. The evidence was not dispositive as to this issue; therefore the trial court did not err when it denied Hugh's motion for directed verdict.

{¶ 52} Accordingly, the first assignment of error is overruled.

**Hugh Failed to Raise the Defense of Corporate Shield**

{¶ 53} Turning to the second assignment of error, Hugh argues that he should not be held personally liable for the actions of Osmic Inc. in the 2013 lawsuit. He argues that in order to find him personally liable, Linda should have pleaded a claim to pierce the corporate veil. Additionally, he argues there was no evidence presented that would allow Linda to reach him personally.

{¶ 54} However, we note that Hugh did not raise as a defense that he was protected by a corporate shield with the trial court. A corporate officer has a responsibility to identify the capacity in which they are engaging in a specific transaction. *Indep. Furniture Sales, Inc. v. Martin*, 184 Ohio App.3d 562, 2009-Ohio-5697, 921 N.E.2d 718, ¶ 16 (8th Dist.). Assuming for the sake of argument that the family plan was a valid document, Hugh never established that he was a corporate shareholder at the time the agreement was signed. The document itself identifies Linda and Anna as the majority shareholders. Further, Linda's undisputed testimony was that she held 40 percent of the shares and Anna held 60 percent. Additionally, all four family members, again assuming the validity of the

agreement, signed in their individual capacities. The only signatory who is identified by a company affiliation is the manager of St. Paul Credit Union, Anthony L. Raguz.

{¶ 55} Moreover, Hugh engaged in Linda's lawsuit as an individual. Hugh's answer focused on *his* right to file the 2013 lawsuit, not the company's right. Hugh's amended counterclaim for breach of good faith and fair dealing alleged that Linda "knew she needed the consent of Hugh" to sell the properties. Hugh identified the members of the family plan as the four family members but did not include the corporation. Further, Hugh alleged that he personally suffered damages as a result of Linda's actions. Finally, in his declaratory judgment claim, Hugh asked the court to declare his interest in the properties, not Osmic, Inc.'s interest. Hugh's Amended Answer and Counterclaim ¶¶ 9, 15, 19, 21, 25, 26, 27, 31, 32.

{¶ 56} Having failed to raise the defense of corporate shield below, we may not consider it. "'[E]rrors that are not brought to the attention of the court by objection or otherwise are waived and may not be raised on appeal.'" *Lindsley v. Roe,* 196 Ohio App.3d 596, 2011-Ohio-3235, 964 N.E.2d 1063, ¶ 27 (6th Dist.), quoting *Stores Realty Co. v. Cleveland* , 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975).

{¶ 57} Accordingly, the second assignment of error is overruled.

## Damages were Supported by the Greater Weight of the Evidence

{¶ 58} In the third assignment of error, Hugh argues that the award of damages must be vacated because it was against the manifest weight of the evidence. Specifically, Hugh argues that, because the damages amount, allegedly, includes

attorney fees and the amount was greater than Linda requested, it is against the manifest weight of the evidence and must be vacated.

*Manifest Weight Standard*

> When reviewing the manifest weight of the evidence in a civil case, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. A verdict supported by some competent, credible evidence going to all the essential elements of the case must not be reversed as being against the manifest weight of the evidence. *Domaradzki v. Sliwinski*, 8th Dist. Cuyahoga No. 94975, 2011-Ohio-2259, ¶ 6; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

*Austin v. Chukwuani*, 2017-Ohio-106, 80 N.E.3d 1199, ¶ 44 (8th Dist.).

{¶ 59} Additionally, there is a presumption that the jury's finding is correct because they had the opportunity to directly observe the witnesses, see their demeanor and gestures, and hear their voice inflections and use that information in weighing the credibility of the testimony presented. *Id.* at ¶ 46.

*Attorney Fees*

{¶ 60} We remanded this case to the trial court for a determination of whether the jury's award included attorney fees. The trial court found that it did not, and we agree. The jury was not instructed on attorney fees nor was there any testimony calculating Linda's attorney fees. Furthermore, the jury's award indicated that they were awarding an amount in damages *and* attorney fees, suggesting that in addition to the damages, they felt Linda should recoup her attorney fees for the

action, whatever that amount would be. The evidence simply does not support a finding that attorney fees were included in the jury's monetary award.

*The Damages Award*

{¶ 61} With respect to the award of $488,801, Hugh argues that the amount itself is more than Linda asked for and therefore suggests it includes attorney fees and furthermore, that the damages amount is not supported by the record. However, we note that

> in Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice *or* a finding that the award is manifestly excessive.

(Emphasis sic.) *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 655, 635 N.E.2d 331 (1994).

{¶ 62} When considering the excessiveness or inadequacy of damages awarded by a jury, the complaining party must be able to point to something in the record that wrongfully inflamed the sensibilities of the jury. *State Auto Property & Cas. Ins. Co. v. ABCO Fire Protection, Inc.*, 2021-Ohio-1189, 170 N.E.3d 1255, ¶ 19 (8th Dist.). An appellate court may set aside an award of damages as against the manifest weight of the evidence if it finds that the verdict was "so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim." *Tenaglia v. Russo*, 8th Dist. Cuyahoga

No. 87911, 2007-Ohio-833, ¶ 22, citing *Iames v. Murphy*, 106 Ohio App.3d 627, 666 N.E.2d 1147 (1st Dist. 1995).

{¶ 63} It is undisputed in this case that the negotiated contract price for parcels 007 and 008 was $600,000. Linda testified that the estimated value of all three of her parcels after taxes, was under $100,000, suggesting damages of around $500,000. (Tr. 329-330.) Linda submitted as evidence the market value of the properties as listed on the Cuyahoga County Auditor's website. Those records established that Linda paid approximately $33,000 in property taxes for parcels 007 and 008 between 2013 and 2019, cumulatively. During closing argument, Linda's attorney argued that the current market value of parcels 007 and 008 was $142,400. The combined market value of the parcels per the auditor's records was $161,300 in 2013 but dropped to $159,700 by 2017. Records for parcel 007 from tax year 2019 showed the market value of that property had dropped by $15,200 from its value in 2017. Records for parcel 008 in 2019 were not submitted. The jury's award of $488,801 was within the range established by these numbers.

{¶ 64} Hugh has not pointed to any specific fact that might have inflamed the jury. He suggests that merely because the amount awarded is more than Linda asked for it must be deemed improper.

{¶ 65} However, once a plaintiff establishes a right to damages, that right will not be denied "merely because the damages cannot be calculated with mathematical certainty." *Chukwuani*, 2017-Ohio-106, 80 N.E.3d 1199, ¶ 21 (8th Dist.). We are mindful that damages may not be based on mere speculation and conjecture. *Shaw*

*Steel, Inc. v. Ronfeldt Mfg., L.L.C.*, 8th Dist. Cuyahoga No. 102665, 2016-Ohio-1117, ¶ 53 citing *Glenwood Homes v. State Auto Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 72856, 1998 Ohio App. LEXIS 4656, 16 (Oct. 1, 1998). Here, however, there is evidence in the record with which the jury could have calculated the damages amount.

{¶ 66} Given the foregoing facts, we cannot say that the jury's award was so gross as to shock the senses, cannot be reconciled with the available evidence, or that the jury failed to include some basis for damages.

{¶ 67} Accordingly, the third assignment of error is overruled.

{¶ 68} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
EILEEN A. GALLAGHER, J., CONCUR